### WALVOORD v. KEYSTONE MORTGAGE CO.

No. 12867.

Court of Civil Appeals of Texas. Dallas.

March 16, 1940.

Rehearing Denied May 4, 1940.

John C. Walvoord, Jr., of Dallas, for appellant.

Coker, Rhea & Vickrey, of Dallas, for appellee.

LOONEY, Justice.

On original submission, we affirmed the judgment of the trial court without a written opinion, and later overruled appellant's motion for rehearing; but, after due consideration, permitted appellant to file a second motion for rehearing, which is now under consideration.

Appellant sued appellee, to recover $174.94 unearned interest, alleged to have been paid under stress of a business necessity, amounting to coercion and duress. The material facts are these: In November, 1931, appellant and wife executed a deed of trust on 119 acres of land situated in Denton County, Texas, to secure a loan of $4,750, bearing 7 per cent. interest per annum, evidenced by one note for the principal amount, in favor of the Central Life Assurance Society (Mutual), of Des Moines, Iowa, payable in installments, bearing 5½ per cent. interest, evidenced by coupon notes attached, and a second note for $607.50, also payable to the Central Life Assurance Society (Mutual), in installments representing 1½ per cent. interest on the loan. The latter note, that is, the 1½ per cent. interest note, was assigned by the payee to Keystone Mortgage Company, appellee, the broker negotiating the loan.

It seems that, in the spring of 1938, appellant was offered a good price for the 119-acre tract by a Mr. Holmes, who stipulated, as conditions precedent to his purchase, that the land should be freed of all liens and encumbrances on or before June 1, 1938. Being anxious to sell the land to Mr. Holmes at the price offered, appellant opened and conducted negotiations with appellee, seeking an agreement permitting prepayment of the 1½ per cent. interest notes, as shown by the following correspondence:

On March 7, 1938, appellant opened the negotiations with the following letter to the Keystone Mortgage Company: "Gentlemen: Ref. your loan No. 1168-12 in my farm in Denton Co. Texas. I have an opportunity to sell this farm but the purchaser wants to be assured that he can pay off all indebtedness as soon as he buys. Please let me know what you will take for the notes you hold. You have 4 I believe coming due on Dec. 1st of the next 4 years. Please help me make this sale as such opportunities don't come every day."

Appellee answered the letter on March 10, 1938, as follows: "In re: 1168-12– Walvoord. Replying to your letter of March 7th. We will be glad to cooperate with you in making your sale, so will discount the balance of the note due us, on the basis of 6% to the respective maturities of the installments. The face amount of the note is now $225.00, as you of course know, and we will accept $202.20."

And, on March 21, 1938, continuing the correspondence, appellant wrote appellee, as follows: "Answering your letter of March 10th in which you offer to take $202.20 for above note of $225.00. The sale of this land is still hanging fire. The buyer doesn't want to assume any debt and I don't feel that I should stand all the extra expense of clearing it up. I did not figure on it in setting my price in our preliminary negotiations. The deal also involves a trade in which I receive a tract of some 60 acres. Won't you cut your price to $112.50 thus going 50-50 with me? You have already received a nice commission on this deal. If I had been able to pay off during the first five years you wouldn't have received anything after that and this 1½% during the second five years is almost velvet to you. Please wire me you will cut it to $112.50 and help me make a trade.", which was answered by appellee on March 22, 1938, as follows: "Dear Sir: Your

letter of yesterday was received this morning and it is with real regret that we must advise you that we can not grant your request to accept $112.50 in settlement of the note. Were it just this one case the matter would be different but you of course understand that we have great numbers of similar notes and yours is by no means the only request of that nature. Should we make such a material reduction in one case we in all fairness would have to do the same with all and you can readily see what would happen to our assets in a short time. We sincerely hope you can still put through your deal, since that is what you want to do, and are really sorry that we can not consistently grant your request."

On May 24, 1938, appellant, renewing the correspondence, wrote appellee, as follows: "Gentlemen: Renewing the correspondence we had in March regarding the discounting of the above note. We have finally come to an agreement now to trade farms and since the buyer does not want to assume any debt, it is necessary that it be paid. You offered to discount the balance of this note at 6% to the different maturities of the remaining installments and will you please use June 1st as the date to figure from or is $202.20 the sum mentioned in your letter of March 10th satisfactory? Please send release and draft for whatever it amounts to to the National Bank of Commerce, attention Geo. Miller, Cashier, Dallas, Texas, by June 1st, 1938. Will you please acknowledge this letter at once so that I may know and depend on this arrangement being carried out?"; and the negotiations were concluded by appellee's letter to appellant, under date of May 26, 1938, as follows: "Dear Sir: In re Loan No. 1168–12 Walvoord. Pursuant with the request contained in your letter of May 24, we have computed the amount due on your note for the original sum of $607.50 and find that the figure required to completely pay the note is $203.07 as of June 1, 1938. We maintain an office in Dallas, located in the Tower Petroleum Building, room 315, consequently, we are sending the note, release and an assignment to them with instructions to present the same to the National Bank of Commerce for payment. Trusting that this arrangement will be agreeable with you, we are, * * *".

It was stipulated that the above correspondence contained all the information that passed from appellant to appellee and from appellee to appellant, concerning the terms of the sales agreement and concerning appellant's request for prepayment of the interest note and release of the lien. So, on June 1, 1938, appellant having obtained consent of Central Life Assurance Society (Mutual) to the prepayment of the principal note, all negotiations ended, the trade was consummated, appellant paying the principal note and obtaining release thereof, also paid appellee the $174.94 involved in this controversy, and thereafter instituted the present suit to recover it back, on the alleged ground that the payment was made under stress of a business necessity amounting to duress.

The court filed lengthy findings of fact giving the history of the case, the most material being that appellant did not make the payment to appellee under the force and stress of business necessity, but that the payment was made in order that appellant might avail himself of the opportunity to dispose of his land at an advantageous price, in excess of its market value; that appellee made no demand upon appellant for the payment; nor did appellant make any protest in regard to the payments. Having found that the payment was voluntary, the court denied appellant recovery, from which he appealed and assigned errors.

The undisputed facts showing that the payment was voluntary, we think the case was correctly decided. Duress, as that term is used in this connection, means constraint or pressure of such nature as to virtually rob one of his free agency, compelling acceptance of the alternative of either paying, or suffering great financial loss, or business disadvantage, 32 Tex.Jur. 733. We do not think appellant acted under any such compulsion in making the payment involved; on the contrary, we think it appears that the payment was voluntarily made as the result of negotiations initiated by him. In the course of negotiations, demands are frequently made, requiring certain things as conditions precedent to the consummation of the particular trade under consideration, as, in the instant case, Mr. Holmes, the proposed purchaser, required the land to be freed of all encumbrances by June

1, 1938, and we think it obvious that compliance by appellant with these terms was necessary for the consummation of the sale of the land to Holmes. But even if payment of the unaccrued interest be considered a business necessity, such necessity arose, not from any demand made by appellee, but from the requirements of Mr. Holmes, with whom appellant was negotiating. To entitle a party to recover money paid, even under circumstances of duress, the compulsion or coercion employed must be by the party to whom payment was made. 48 C.J. 753.

We conclude, therefore, that the judgment of the trial court was correct, hence overrule appellant's second motion for a new trial, and his request that the questions of law arising in the case be certified to the Supreme Court for adjudication, is denied.